STATE OF NORTH CAROLINA v. JERRY JUNIOR McNEIL

No. COA10-456

(Filed 1 March 2011)

**1. Larceny— felony larceny—fatally defective indictment— failure to allege ownership of handgun**

The trial court erred by entering judgment for felony larceny. The indictment was fatally defective because it failed to allege ownership of the 9 mm handgun.

**2. Identification of Defendants— motion to dismiss—sufficiency of evidence—perpetrator of crime**

The trial court did not err by denying defendant's motion to dismiss the charge of felonious breaking or entering based on alleged insufficient evidence that defendant was the perpetrator of the crime. The victim recognized defendant from a distance at the scene of the crime because she was familiar with him, and law enforcement was able to identify defendant's automobile.

**STATE v. McNEIL**

[209 N.C. App. 654 (2011)]

**3. Firearms and Other Weapons— possession of firearm by felon—motion to dismiss—sufficiency of evidence—constructive possession of gun**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of a firearm by a felon even though defendant contended there was insufficient evidence that he had possession of a gun found in a clothes hamper. Defendant had a specific connection to the place where the gun was found, he behaved suspiciously, and he was aware of the gun's presence at the victim's home. Further, the State's evidence of other incriminating circumstances established that defendant constructively possessed the gun.

**4. Constitutional Law— right to fair trial—due process— trial court's comments about defendant's absence from courtroom**

Defendant was not deprived of a fair trial and due process in a felonious breaking or entering, felonious larceny, and possession of a firearm by a felon case even though defendant contended the trial court made improper comments about his absence from the courtroom. In light of the circumstances in which the comment was made, the trial court merely explained defendant's absence for the record. Even assuming *arguendo* that there was error, defendant failed to show that the jury would have reached a different result.

**5. Damages and Remedies—restitution—sufficiency of evidence—amount of award**

The trial court erred in a felonious breaking or entering, felonious larceny, and possession of a firearm by a felon case by ordering defendant to pay $217.40 in restitution because the State failed to present evidence supporting the amount of the award.

Appeal by defendant from judgments entered 1 December 2009 by Judge W. Allen Cobb, Jr., in Sampson County Superior Court. Heard in th e Court of Appeals 13 October 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Anne J. Brown, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender S. Hannah Demeritt, for defendant-appellant.*

CALABRIA, Judge.

Jerry Junior McNeil ("defendant") appeals judgments entered upon jury verdicts finding him guilty of felonious breaking or entering, felonious larceny, and possession of a firearm by a felon. We arrest judgment for defendant's conviction for felonious larceny, find no error in defendant's convictions for felonious breaking or entering and possession of a firearm by a felon, and vacate the trial court's judgment requiring defendant to pay restitution and remand for redetermination.

## I. BACKGROUND

At 11:00 a.m. on 29 November 2007, Katrina Carroll ("Carroll") heard "loud banging and crashing" at the back door of the home she shared with Gary Willis ("Willis") at 205 Carolina Avenue in Clinton, North Carolina. The person who made the noise was a man. Since the man was entering the back door of her home without permission, Carroll rushed to the front door to exit her home. She also observed that the man, later identified as defendant, had a dreadlock hairstyle and wore a yellow toboggan with a black stripe.

After Carroll successfully exited her home, she met an elderly couple ("the couple") who offered her a ride in their vehicle. The couple then drove Carroll to a neighbor's home and parked in the driveway located approximately 15 to 20 feet from Carroll's driveway. There Carroll observed a gold automobile ("the automobile") parked in her driveway. As the automobile backed out of Carroll's driveway, she observed three men in the automobile. The man sitting in the back seat, subsequently identified as defendant, had a dreadlock hairstyle and wore a yellow toboggan with a black stripe. The man sitting in the back seat was the same man who entered Carroll's back door as she exited her home. As the automobile slowly backed out of the driveway, Carroll had enough time to record the numbers on the automobile's license plate.

At 11:14 a.m., Carroll contacted the Clinton Police Department ("CPD"), reported what happened at her home, and gave Detective Dameon Parker ("Detective Parker") the numbers from the license plate of the automobile that backed out of her driveway. Detective Parker found that the automobile was registered to defendant. When Detective Parker arrived at Carroll's home five minutes later, he discovered that the back door was "busted in," "splinters of wood" were on the floor, and the "lock had been kicked in." During the investigation, Detective Parker asked Carroll if anything was missing from her home. She told him that Willis kept a 9 mm handgun ("the

gun") in the nightstand beside her bed in the master bedroom and it was missing. Detective Parker then entered the master bedroom, noticed that the nightstand's drawer had been opened, and observed that the gun was not in the drawer. Neither Carroll nor Willis had given anyone permission to enter their home or to take the gun. Carroll and Willis then provided the serial number of the handgun to Detective Parker.

Shortly after the incident at the Carroll/Willis residence, at 11:30 a.m. on 29 November 2007, Esther Bass ("Bass") heard a knock at the back door of her home at 220 West Carter Street in Clinton, North Carolina. Bass' daughter, who formerly dated defendant, opened the door for defendant and two other men (collectively, "the three men"). After the three men entered Bass' home, Bass' daughter warned them that law enforcement officers were "around the house." Bass observed the three men as they walked through her dining room and exited through her front door.

Officer Willie Bowden ("Officer Bowden") and Detective Grady (collectively, "the officers") of the CPD were the officers who responded to a call and arrived at Bass' home. During Officer Bowden's investigation, he observed a gold automobile parked in the driveway. He also observed "three to four" men, including defendant, standing on the front porch of Bass' home.

Bass gave the officers permission to search her home. Since the officers learned that defendant entered the home through the back door, they searched the area surrounding the back door. The laundry area was an area next to the back door. Detective Grady found a 9 mm handgun inside a clothes hamper located in the laundry area. When the serial number on the gun found in the clothes hamper was checked, it matched the serial number of the gun that was missing from Carroll's home.

Defendant was arrested and indicted for felonious breaking and entering, felonious larceny pursuant to breaking and entering, possession of stolen goods, and possession of a firearm by a convicted felon. Although defendant was also indicted for attaining the status of an habitual felon, the trial court later dismissed this indictment.

The case was heard before the 15 June 2009 criminal session of Sampson County Superior Court. On the first day of the trial, the trial court ordered defendant to return to the courtroom no later than 2:00 p.m. following lunch recess. However, defendant failed to appear for

trial following the recess. The trial did not resume until 3:08 p.m. that day. According to the transcript, defendant never returned to court. Defendant's counsel moved to dismiss all charges at the close of the State's evidence, and the trial court denied the motion. Defendant did not present evidence. The jury returned verdicts finding defendant guilty of felonious breaking or entering, felonious larceny, possession of stolen goods, and possession of a firearm by a felon.

The trial court sentenced defendant to minimum terms of 11 months to maximum terms of 14 months on the charges of felonious larceny and felonious breaking or entering. On the charge of possession of a firearm by a convicted felon, the trial court sentenced defendant to a minimum term of 19 months to a maximum term of 23 months.[1] The trial court ordered defendant to serve all sentences consecutively in the custody of the North Carolina Department of Correction, and also ordered defendant to pay $217.40 as restitution to Willis for the damage to the door. Defendant appeals.

## II. INDICTMENT FOR FELONIOUS LARCENY

[1] Defendant argues that the trial court erred in entering judgment for felonious larceny because the indictment, which failed to allege ownership of the 9 mm handgun, was fatally defective. We agree.

An indictment must allege "facts supporting every element of [the charged] criminal offense . . . with sufficient precision to apprise the defendant . . . of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2009). We review the sufficiency of an indictment *de novo*. *State v. McKoy*, —— N.C. App. ——, ——, 675 S.E.2d 406, 409 (2009). A defective indictment deprives the trial court of jurisdiction. *State v. Call*, 353 N.C. 400, 429, 545 S.E.2d 190, 209 (2001). An indictment is invalid and prevents the trial court from acquiring jurisdiction over the charged offense if "fails to state some essential and necessary element of the offense of which the defendant is found guilty." *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998). An essential element of larceny is that the defendant "took the property of another." *State v. Perry*, 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982), *overruled on other grounds by State v. Mumford*, 364 N.C. 394, 699 S.E.2d 911 (2010). "An indictment for larceny which fails to allege the ownership of the property . . . is

---

1. The trial court arrested judgment on the charge of possession of stolen goods "because by operation of law those are inconsistent verdicts" with defendant's convictions for felonious breaking and entering and felonious larceny.

fatally defective." *State v. Cathey*, 162 N.C. App. 350, 352-53, 590 S.E.2d 408, 410 (2004).

In the instant case, defendant's indictment for felonious larceny alleged:

And the jurors for the State upon their oath present that on or about the date of the offense shown [29 November 2007] and in Sampson County the defendant named above unlawfully, willfully, and feloniously did steal, take and carry away a 9mm handgun, pursuant to a violation of section 14-54(a) of the General Statutes of North Carolina.

The indictment failed to allege ownership of the 9 mm handgun. The State concedes that the indictment fails to allege ownership of the handgun, and is therefore fatally defective. We agree. Since the indictment for felonious larceny is fatally defective because it failed to allege ownership of the gun, it is insufficient to confer jurisdiction, and this Court arrests the judgment. *State v. McKoy*, 265 N.C. 380, 381, 144 S.E.2d 46, 48 (1965).

### III. MOTION TO DISMISS

[2] Defendant argues that the trial court erred by denying his motion to dismiss the charges of felonious breaking or entering and possession of a firearm by a felon. Defendant claims the State failed to present substantial evidence that he was the perpetrator who entered Carroll's house, stole a gun, and also that he possessed a gun. We disagree.

"This Court reviews a trial court's denial of a motion to dismiss criminal charges *de novo*, to determine 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Davis*, —— N.C. App. ——, ——, 678 S.E.2d 385, 388 (2009) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)), *affirmed in part, reversed in part on other grounds, and remanded*, 364 N.C. 297, 698 S.E.2d 65 (2010). "Substantial evidence is evidence that a reasonable mind might find adequate to support a conclusion." *State v. Hargrave*, —— N.C. App. ——, ——, 680 S.E.2d 254, 261 (2009). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom[.]" *Powell*, 299 N.C. at 99, 261 S.E.2d at 117.

"[C]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve[.]" *State v. Prush*, 185 N.C. App. 472, 478, 648 S.E.2d 556, 560 (2007). "The test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both." *Powell*, 299 N.C. at 99, 261 S.E.2d at 117.

> When the motion . . . calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.

*State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965). "If a jury could reasonably infer defendant's guilt when the evidence is viewed in the light most favorable to the State, then the motion must be denied." *State v. Hines*, 166 N.C. App. 202, 204, 600 S.E.2d 891, 894 (2004).

### A. Felonious Breaking or Entering

Defendant does not dispute that a breaking and entering occurred at Carroll's home.[2] Instead, he contends that the State did not present substantial evidence that he was the perpetrator of the offense. We disagree.

As an initial matter, we note that the trial court did not instruct the jury on acting in concert or aiding and abetting. Therefore, in order for the jury to find defendant guilty of felonious breaking or entering, "the State was required to prove that defendant committed the offenses himself." *State v. Haymond*, —— N.C. App. ——, ——, 691 S.E.2d 108, 122 (2010).

In *State v. Ethridge*, the defendant argued on appeal that the trial court erred by denying his motion to dismiss the charges of, *inter alia*, felonious breaking and entering at the close of all of the evidence "because 'the evidence was insufficient to prove the Defendant was the perpetrator . . . .'" 168 N.C. App. 359, 362, 607 S.E.2d 325, 327 (2005). This Court disagreed, holding that the State

---

1. The essential elements of felonious breaking and entering are that the defendant: (1) broke or entered; (2) a building, including a dwelling; (3) with the intent to commit any felony or larceny therein. *State v. White*, 84 N.C. App. 299, 301, 352 S.E.2d 261, 262 (1987).

presented substantial evidence that the defendant was the perpetrator, including the fact that a vehicle registered to the defendant "was seen at the crime scene . . . [and] was pulled up to the door of the house" on the day the offense occurred. *Id.*

In the instant case, Carroll heard "loud banging and crashing" at the back door of her home. She then observed a man, later identified as defendant, enter her home through the back door. The man had a dreadlock hairstyle and wore a yellow toboggan with a black stripe. Carroll observed only one man enter her home as she fled. When she sat in her neighbor's driveway observing her home, she saw a gold automobile parked in her driveway. While she waited and watched at a distance of approximately 15 to 20 feet away, she "very clearly" observed the automobile leaving her driveway and a man sitting in the back seat. The man had a dreadlock hairstyle and wore a yellow toboggan with a black stripe. Carroll recognized him as the same man she had previously observed entering the back door of her home.

Detective Parker arrived at Carroll's home and observed that "[n]othing in the house seemed to be disturbed." When he asked Carroll if anything was missing, the only item Carroll mentioned was "a handgun [that] was missing from the nightstand beside her bed." Carroll then showed Detective Parker the empty nightstand drawer where she kept the gun.

Carroll was able to recognize defendant from a distance because she was familiar with him. Carroll and defendant had interacted on five previous occasions. The first time was two months prior to the day defendant entered Carroll's home through the back door. On this occasion, Carroll allowed a friend to call defendant and invite him to Carroll's home so that Carroll and her friend could buy drugs from him. Defendant was with the friend in the master bedroom of Carroll's home for approximately 20 minutes attempting to sell drugs to them. On another recent occasion, defendant met Carroll at a convenience store attempting to sell drugs to her. On a third occasion, Carroll contacted defendant. She asked him to sell her some drugs on credit. She also asked him if she could use the gun as collateral until she could pay him with currency. Defendant agreed. He arrived at Carroll's home, gave Carroll the drugs, and took possession of the gun. On the fourth occasion, Carroll attempted to give defendant the money she owed him and asked him to return the gun. Defendant refused to return the gun unless Carroll paid him more money. After Carroll told Willis, she and Willis met with defendant. When Carroll

and Willis gave defendant the extra money, defendant returned the gun. This meeting of Carroll, Willis, and defendant was the fifth time Carroll interacted with defendant.

In addition to Carroll's ability to identify defendant, law enforcement was able to identify defendant's automobile. Carroll observed and recorded the license plate numbers on an automobile parked in her driveway. Detective Parker found that the automobile was registered to defendant. When an automobile registered to a defendant is found at a crime scene, along with evidence that the victim observed a man matching the defendant's description flee the scene, these facts show that defendant "was seen at the crime scene" and "was pulled up to the door of the house" on the day the offense occurred. *See, e.g., People v. Webster,* 136 Cal. App. 2d 44, 288 P.2d 142 (1955) (court found no error in a defendant's conviction for burglary because, *inter alia,* a man answering the defendant's description fled when discovered in the victim's home, and that shortly thereafter a man drove away in an automobile which the defendant had borrowed and which had been parked near such home); *People v. Beal,* 108 Cal. App. 2d 200, 239 P.2d 84 (1951) (The defendant was sufficiently identified with a robbery where witnesses testified that they saw him at the scene of the crime at the time of its commission, the get-away automobile was registered in his name, and money of the same kind and denomination as that stolen was found in his companion's possession at the time of his arrest.).

From the facts in the instant case, a reasonable inference of defendant's guilt may be drawn. We hold that the evidence presented at trial, viewed in the light most favorable to the State, was substantial evidence for the jury to decide whether the facts, taken singly or in combination, satisfied it beyond a reasonable doubt and allowed a reasonable juror to conclude that defendant was the perpetrator of the felonious breaking or entering of Carroll's home. Therefore, the trial court properly denied defendant's motion to dismiss. Defendant's issue on appeal is overruled.

### B. Possession of a Firearm by a Felon

**[3]** In the instant case, defendant does not challenge his status as a convicted felon or that the State failed to prove he was a convicted felon. Instead, defendant argues that the State failed to present substantial evidence that he had possession of the gun found in the clothes hamper. We disagree.

N.C. Gen. Stat. § 14-415.1(a) (2009) prohibits "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon of mass death and destruction as defined in G.S. 14-288.8(c)." "[T]he State need only prove two elements to establish the crime of possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *State v. Wood*, 185 N.C. App. 227, 235, 647 S.E.2d 679, 686 (2007).

> Possession of a firearm may be actual or constructive. *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). Actual possession requires that the defendant have physical or personal custody of the firearm. *Id.* In contrast, the defendant has constructive possession of the firearm when the weapon is not in the defendant's physical custody, but the defendant is aware of its presence and has both the power and intent to control its disposition or use. *Id.* When the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession. *State v. Young*, 190 N.C. App. 458, 461, 660 S.E.2d 574, 577 (2008). Constructive possession depends on the totality of the circumstances in each case. *State v. Glasco*, 160 N.C. App. 150, 157, 585 S.E.2d 257, 262, disc. review denied, 357 N.C. 580, 589 S.E.2d 356 (2003).

*State v. Taylor*, —— N.C. App. ——, ——, 691 S.E.2d 755, 764 (2010). "The requirements of power and intent necessarily imply that a defendant must be aware of the presence of [a firearm] if he is to be convicted of possessing it." *State v. Davis*, 20 N.C. App. 191, 192, 201 S.E.2d 61, 62 (1973).

"[T]here must be more than mere association or presence linking the person to the item in order to establish constructive possession." *State v. Alacoste*, 158 N.C. App. 485, 490, 581 S.E.2d 807, 810 (2003). *See Glasco*, 160 N.C. App. at 157, 585 S.E.2d at 262-63 (noting that, among other things, the fact that the victim's neighbor saw the defendant jumping over a fence into her back yard, near the shed in another neighbor's yard, and that the other neighbor then found the gun in his back yard, near the shed in a pile of tires, "provides a sufficient link between defendant and a firearm to allow for the jury's consideration").

"[C]onstructive possession cases often include evidence that the defendant had a specific or unique connection to the place where the

[contraband was] found." *State v. Ferguson,* —— N.C. App. ——, ——, 694 S.E.2d 470, 477 (2010). *See, e.g., State v. Boyd,* 154 N.C. App. 302, 307, 572 S.E.2d 192, 196 (2002) (State presented evidence that "defendant was the only person who could have placed the drugs where they were found").

In the instant case, defendant disputes that he possessed the missing gun and contends that there is no evidence that he actually possessed the gun. When a defendant does not actually possess a gun, the State is required to prove that the defendant constructively possessed the gun. The issues of constructive possession are: (1) whether defendant was aware of the gun's presence; (2) whether he had the power and intent to control its disposition or use; and (3) whether defendant had exclusive possession of the location where the gun was found.

The State's evidence shows that defendant was aware of the gun's presence because he possessed the gun on at least two prior occasions. Defendant was also very familiar with the master bedroom of Carroll's home, the room where the gun was located. Since Carroll saw only one person break into, enter, and flee her home on 29 November 2007, and she did not give anyone permission to enter her home that day or to take the gun, defendant had the power and intent to control the gun's disposition.

"When the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession." *Taylor,* —— N.C. App. at ——, 691 S.E.2d at 764. "[M]any constructive possession cases involve evidence that the defendant behaved suspiciously[.]" *Ferguson,* —— N.C. App. at ——, 694 S.E.2d at 477.

When the officers arrived at Bass' home, they observed defendant and three other males standing on Bass' front porch and the gold automobile parked in Bass' driveway. The officers performed a search of Bass' home and determined that nobody other than Bass and her daughter were currently in the home. Since defendant did not have exclusive possession of Bass' home, the State was required to show "other incriminating circumstances" in order to show that defendant constructively possessed the gun.

When Detective Parker arrived at Carroll's home, he investigated and observed that "[n]othing in the house seemed to be disturbed."

When he asked Carroll if anything was missing, Carroll "stated [that] a handgun was missing from the nightstand beside her bed." Carroll then showed Detective Parker the empty nightstand drawer where she kept the gun. Carroll did not report any other items missing from her home.

Within fifteen minutes from the time Detective Parker arrived at Carroll's home, defendant left Carroll's home and entered the home of his former girlfriend through the back door and walked past the clothes hamper in the laundry area. When Bass' daughter stated that law enforcement officers were "around the house," defendant immediately fled Bass' home through the front door and stood on the front porch.

When the officers searched Bass' home they found a 9 mm handgun in the clothes hamper in the laundry area by Bass' back door. The serial number on the handgun found in the clothes hamper matched the handgun missing from the drawer in the nightstand in the master bedroom of Carroll's home. Neither Bass nor anyone else in her home possessed a gun.

These facts show that defendant: (1) had a specific connection to the place where the gun was found, (2) behaved suspiciously, and (3) was aware of the gun's presence at Bass' home. They further show that since defendant had taken the gun from Carroll and moved it to the clothes hamper, that he had the power and intent to control its disposition or use.

In conclusion, the State's evidence of "other incriminating circumstances" establishes that defendant constructively possessed the gun. Considering the totality of the circumstances, the State presented substantial evidence of defendant's constructive possession of the gun. The trial court properly denied defendant's motion to dismiss the charge of possession of a firearm by a felon. Defendant's issue on appeal is overruled.

IV. TRIAL COURT'S COMMENTS ABOUT DEFENDANT'S ABSENCE

[4] Defendant argues that he is entitled to a new trial because the trial court's improper comments about his absence from the courtroom deprived him of his rights to a fair trial and due process. We disagree.

Although defendant did not object to the [trial court's comments], any error is still preserved for appeal. Whenever a defendant alleges a trial court made an improper statement by expressing

an opinion on the evidence in violation of N.C.G.S. §§ 15A-1222 and 15A-1232, the error is preserved for review without objection due to the mandatory nature of these statutory prohibitions. *See State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989).

*State v. Duke*, 360 N.C. 110, 123, 623 S.E.2d 11, 20 (2005).

N.C. Gen. Stat. § 15A-1222 (2009) states that "the judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2009). N.C. Gen. Stat. § 15A-1232 (2009) states that "in instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232 (2009).

" 'Also, an alleged improper statement will not be reviewed in isolation, but will be considered in light of the circumstances in which it was made. Furthermore, defendant must show that he was prejudiced by a judge's remark.' " *State v. Jones*, 358 N.C. 330, 355, 595 S.E.2d 124, 140 (2004) *(quoting State v. Weeks*, 322 N.C. 152, 158, 367 S.E.2d 895, 899 (1988) (internal citations omitted)). That is, he must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached" by the jury. N.C. Gen. Stat. § 15A-1443(a) (2009).

In the instant case, although defendant failed to return to the courtroom after the lunch recess on the first day of the trial, his counsel returned and represented him when the trial resumed. The court instructed the jury as follows:

> Good afternoon, ladies and gentlemen. Sorry for the delay. The defendant, for whatever reason and only known to him, has refused to return after the lunch recess. We have given him ample opportunity to show up. He has failed to do so. His lawyer has asked to continue the trial. The Court, in its discretion, has refused and denied this request for a continuance. This is permissible and we're going to go forward with the trial of this matter in his absence.

> His absence is not to concern you for any reason whatsoever with regard to your job in this case and that is to hear the evidence as it comes from this witness stand and to render a fair and impartial verdict based on the evidence that you have heard as it comes from the witness stand.

Defendant's counsel did not object to the court's instruction. However, any error is still preserved for appeal. *Jones*, 358 N.C. at 355, 595 S.E.2d at 140.

The trial court did not express an opinion on any statement of fact to be decided by the jury, nor did it express an opinion as to whether or not a fact had been proved. Furthermore, the trial court did not comment on the evidence or the application of the law to the evidence. In light of the circumstances in which the comment was made, the trial court merely explained defendant's absence for the record. Therefore, neither N.C. Gen. Stat. §§ 15A-1222 nor 15A-1232 apply. Furthermore, even assuming *arguendo* that these statutes applied and that the trial court erred, defendant cannot show that, but for the trial court's statement, the jury would have reached a different result. Defendant's issue on appeal is overruled.

## V. ORDER OF RESTITUTION

[5] Defendant argues that the trial court committed reversible error by ordering him to pay restitution when the State presented no evidence to support the award. We agree, and we therefore vacate and remand the restitution order.

Defendant raises for the first time on appeal an objection to that portion of his sentence requiring him to pay $217.40 to Willis in restitution.

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure permits review of issues that " 'by rule or law [are] deemed preserved[.]" N.C.R. App. P. 10(b)(1) (2009). Furthermore, N.C. Gen. Stat. § 15A-1446(d)(18) (2009) allows for appellate review of sentencing errors even where there was no objection at trial. *State v. Reynolds*, 161 N.C. App. 144, 149, 587 S.E.2d 456, 460 (2003). On appeal, we consider *de novo* whether the restitution order was " 'supported by evidence adduced at trial or at sentencing.' " *State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) (quoting *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995)).

In *Wilson*, our Supreme Court held that "the amount of restitution recommended by the trial court must be· supported by evidence adduced at trial or at sentencing." 340 N.C. at 726, 459 S.E.2d at 196; *see State v. Daye*, 78 N.C. App. 753, 756, 338 S.E.2d 557, 560 (1986). "[T]o justify an order to pay restitution, 'there must be something more than a guess or conjecture as to an appropriate amount of restitution.' " *State v. Clifton*, 125 N.C. App. 471, 480, 481 S.E.2d 393,

399 (1997) (quoting *Daye*, 78 N.C. App. at 757-58, 338 S.E.2d at 561 (1986)). "Even though recommendations of restitution are not binding, we see no reason to interpret the statutes of this State to allow judges to make specific recommendations that cannot be supported by the evidence before them." *Daye*, 78 N.C. App. at 757, 338 S.E.2d at 560. Therefore, "[r]egardless of whether restitution is ordered or recommended by the trial court, the amount must be supported by the evidence." *Id.* Unsworn statements of a prosecutor, standing alone, cannot support an award of restitution. *State v. Buchanan*, 108 N.C. App. 338, 341-42, 423 S.E.2d 819, 821 (1992).

In the instant case, Detective Parker testified that the back doors of Carroll's home were "busted in," that "[t]here were splinters of wood laying on the floor," and that "the lock had been kicked in." A photograph of the damaged doors was shown to the jury, and the State submitted a Restitution Worksheet, Notice and Order, stating that there was damage caused to the home. Though defendant did not contest the amount on the worksheet, this is not the same as a stipulation to the amount of restitution. *See State v. Replogle*, 181 N.C. App. 579, 584, 640 S.E.2d 757, 761 (2007). Furthermore, the worksheet was an unsworn statement by a prosecutor and as such "does not constitute evidence and cannot support the amount of restitution recommended." *Buchanan*, 108 N.C. App. at 341, 423 S.E.2d at 821. " '[W]hen . . . there is some evidence as to *the appropriate amount* of restitution, the recommendation will not be overruled on appeal.' " *State v. Davis*, 167 N.C. App. 770, 776, 607 S.E.2d 5, 10 (2005) (emphasis added) (quoting *State v. Hunt*, 80 N.C. App. 190, 195, 341 S.E.2d 350, 354 (1986)) (affirming restitution award for $180.00 when evidence indicated that victim had between $120.00 and $240.00 stolen from her pocketbook).

Here, there was no evidence as to "the appropriate amount" of restitution. There was merely testimony and visual evidence that Carroll's door was "busted in." After careful review of the record, we find no evidence of the cost of the broken door or who paid for it. *See Clifton*, 125 N.C. App. at 480, 481 S.E.2d at 399 ("After careful review of the record we find no evidence of the cost of [the victim's] funeral or who paid for it."). Therefore, the restitution portion of the judgment must be vacated and remanded to the trial court for redetermination. *Davis*, 167 N.C. App. at 776-77, 605 S.E.2d at 10.

## VI. CONCLUSION

We arrest judgment for defendant's conviction for felonious larceny, we find no error in defendant's convictions for felonious breaking or entering and possession of a firearm by a felon, and we vacate and remand the restitution portion of defendant's sentence.

Judgment arrested in part, no error in part, and vacated and remanded in part.

Judges HUNTER, Robert C. and GEER concur.