An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-361

NORTH CAROLINA COURT OF APPEALS

Filed:  6 January 2015

STATE OF NORTH CAROLINA

    v.

TERRENCE MONTREAL NORRIS

Cleveland County
No. 12 CRS 050344

Appeal by defendant from judgment entered 26 August 2013 by Judge C. Thomas Edwards in Cleveland County Superior Court. Heard in the Court of Appeals 24 September 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Alvin W. Keller, Jr., for the State.*
>
> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for defendant-appellant.*

CALABRIA, Judge.

Terrence Montreal Norris ("defendant") appeals from a judgment entered upon jury verdicts finding him guilty of second degree murder and possession of a firearm by a felon.  We find no error at trial, but remand to the trial court to reconsider the amount of restitution.

I. Background

On 20 January 2012, twin sisters Patricia "Fonda" Watkins ("Fonda") and Rita "Wonda" Watkins ("Wonda") (collectively, "the Watkins sisters"), and Brian Galmer ("Galmer") were gathered at Wonda's home in Shelby, North Carolina. Later, they all relocated across the street to Fonda's residence, because they intended to purchase crack cocaine and did not want to smoke the cocaine in front of Wonda's children. They contacted "T-Mack" (later identified as defendant) to buy crack cocaine from him. Kelton Ross ("Ross"), a close friend of the Watkins sisters, subsequently arrived at Fonda's residence. Ross was upset and had argued with defendant earlier in the evening because defendant had not paid him for work he had completed. When Ross and defendant saw one another at Fonda's house, the men argued, left the house, returned, and resumed arguing.

Although Wonda, Fonda, and Galmer encouraged both men to stop arguing, defendant fired three shots at Ross. At the time, Galmer stood next to Ross across the room from defendant. Two of the shots, from a firearm that had been concealed in defendant's jacket pocket, hit Ross in the chest. Ross later died from his injuries.

Sergeant William Craig Earwood ("Sgt. Earwood") of the Shelby Police Department ("SPD"), one of the law enforcement officers who helped to secure the scene, discovered Ross lying

face down on the floor, partially blocking the front door of the house. When emergency medical services personnel entered the house to perform lifesaving procedures, they discovered Ross had been lying on top of a gold-colored candleholder. Later, Randy Conner ("Conner"), an SPD crime scene investigator, recovered the candleholder from under a loveseat in the living room, where it had been moved by emergency services personnel. Conner also recovered another brass candleholder from under the coffee table.

Defendant fled to South Carolina, where he briefly stayed with his family. Three days later, defendant surrendered to law enforcement. Before surrendering, defendant called Wonda and offered to send her something of value if she agreed not to identify him to law enforcement. Defendant was charged with first degree murder, intimidating a witness, possession of a firearm by a felon, and obstruction of justice. At trial, the State presented testimony from several witnesses, including Wonda, Fonda, Galmer, Sgt. Earwood, and Conner. The witness intimidation offense was dismissed at the close of the State's evidence.

On 26 August 2013, the jury found defendant not guilty of obstruction of justice. However, the jury found defendant guilty of second degree murder and possession of a firearm by a

felon. The trial court sentenced defendant to a minimum of 156 months and a maximum of 200 months in the custody of the North Carolina Division of Adult Correction. Defendant was also ordered to pay restitution in the amount of $6,670 to Ross's mother and $46 to Shelby Radiological Associates. Defendant appeals.

## II. Jury Instruction

Defendant first argues that the trial court committed plain error by instructing the jury that he could not receive the benefit of self-defense if he were the aggressor. We disagree.

Because defendant failed to object to the jury instruction as given, we must apply plain error review. The Supreme Court of North Carolina "has elected to review unpreserved issues for plain error when they involve . . . errors in the judge's instructions to the jury[.]" *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation and quotation marks omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a

different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

"[T]he defendant can be considered the aggressor when [he] 'aggressively and willingly enters into a fight without legal excuse or provocation.'" *State v. Vaughn*, ___ N.C. App. ___, ___, 742 S.E.2d 276, 279 (2013) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)). "A person is considered to be an aggressor . . . when he has provoked a present difficulty by language or conduct towards another that is calculated and intended to bring it about." *State v. Effler*, 207 N.C. App. 91, 97, 698 S.E.2d 547, 551-52 (2010) (citation omitted). When "more than sufficient evidence was presented to indicate that [a] defendant could have been the aggressor in the fight resulting in the victim's death[,]" it is not error to deliver an instruction that the defendant was not entitled to self-defense if he was the aggressor. *State v. Wood*, 149 N.C. App. 413, 419, 561 S.E.2d 304, 308-09 (2002).

In the instant case, the trial court instructed the jury, in pertinent part, as follows:

> The defendant would not be guilty of any murder or manslaughter if the defendant acted in self-defense, and if the defendant was not the aggressor in provoking the fight and did not use excessive force under the circumstances.

. . .

> A person is . . . justified in using
> defensive force when the force used by the
> person who was provoked is so serious that
> the person using defensive force reasonably
> believes that he was in imminent danger of
> death or serious bodily harm, the person
> using defensive force had no reasonable
> means to retreat, and the use of force
> likely to cause death or serious bodily harm
> was the only way to escape the danger.
>
> The defendant is not entitled to the benefit
> of self-defense if the defendant was the
> aggressor with the intent to kill or inflict
> serious bodily injury upon the deceased.

Defendant relies upon four cases to support his argument that the jury instruction was erroneous because there was no evidence that he was the aggressor: *State v. Washington*, 234 N.C. 531, 67 S.E.2d 498 (1951); *State v. Tann*, 57 N.C. App. 527, 291 S.E.2d 824 (1982); *State v. Jenkins*, 202 N.C. App. 291, 688 S.E.2d 101 (2010); and *State v. Vaughn*, __ N.C. App. ___, 742 S.E.2d 276 (2013). However, defendant's cases are distinguishable. All of them held that the aggressor instruction was erroneous because there was no evidence to establish that the defendants were the aggressors in their respective situations. In the instant case, there is sufficient evidence to suggest that defendant was, or could have been, the aggressor in his encounter with Ross.

The State presented evidence from several witnesses that although Ross had argued with defendant throughout the evening, that argument had never escalated to a physical altercation. Galmer testified that Ross picked up a candleholder, but quickly returned it to the coffee table when Wonda scolded him. Wonda corroborated Galmer's testimony regarding Ross picking up the candleholder and returning it to the table. Wonda also testified that Ross did not raise the candleholder or swing it in defendant's direction. Although defendant argues that he feared for his life, alleging that Ross attacked him with a candleholder, testimony from the State's witnesses indicated that Ross was not holding the candleholder when defendant fired the shots.

The evidence also indicates that Ross was unarmed and attempting to leave the house when defendant fired the shots. Fonda testified that she thought the argument had "settled down," when she heard a "firecracker" in the living room. She also testified that she heard Ross say "no, man, you ain't got to do that" just before she saw defendant fire the last shot. Both Wonda and Galmer testified that Ross had nothing in his hands and was attempting to leave the house through the front door when defendant fired. Sgt. Earwood testified that Ross was

lying on the floor in front of the door when law enforcement and emergency medical services personnel arrived.

The State also presented evidence from the medical examiner regarding the shape of the bullet trajectory. The fact that the trajectory was curved instead of straight indicated that Ross was not directly facing the direction of the shots, but was turned with his left shoulder rotated forward when he was struck by the bullets.

When there is conflicting evidence as to which party was the aggressor, the jury, as the finders of fact, are entitled to determine which of the parties, if either, is the aggressor. *See State v. Cannon*, 341 N.C. 79, 82-83, 459 S.E.2d 238, 241 (1995) (trial court "properly allowed the triers of fact to determine that [the] defendant was the aggressor" when the evidence supported an inference that the defendant shot at the victim as she was trying to leave); *see State v. Williams*, 100 N.C. App. 567, 572, 397 S.E.2d 364, 367 (1990) (no error in aggressor instruction when there was evidence that the victim was unarmed and the defendant shot the victim a second time even after he pleaded with the defendant not to shoot again). However, even if Ross were the aggressor, the evidence is sufficient to support an inference that defendant used excessive force under the circumstances by firing three shots at Ross, who

was unarmed and attempting to leave. Since defendant has failed to convince this Court that the jury would have reached a different result, he fails to show that the trial court's instruction constituted plain error. Therefore, the jury properly returned a verdict finding defendant guilty of second degree murder. This argument is overruled.

### III. Restitution

Defendant also argues that the trial court erred in ordering a total of $6,816 in restitution because the amount was not supported by evidence. We agree.

"[A] defendant's failure to specifically object to the trial court's entry of an award of restitution does not preclude appellate review." *State v. Mauer*, 202 N.C. App. 546, 551, 688 S.E.2d 774, 777-78 (2010). "On appeal, we consider *de novo* whether the restitution order was supported by evidence adduced at trial or at sentencing." *State v. McNeil*, 209 N.C. App. 654, 667, 707 S.E.2d 674, 684 (2011) (citation and internal quotation marks omitted).

"[T]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." *State v. Wilson*, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995). "[A] restitution worksheet, unsupported by testimony or documentation, is insufficient to support an order

of restitution." *Mauer*, 202 N.C. App. at 552, 688 S.E.2d at 778. "Unsworn statements of a prosecutor, standing alone, cannot support an award of restitution." *McNeil*, 209 N.C. App. at 668, 707 S.E.2d at 684.

In the instant case, the State submitted a restitution worksheet for medical bills and funeral costs totaling $6,816. However, the State did not present any evidence to show the total amount of restitution. Defendant neither stipulated nor objected to the proposed amount of restitution. In addition, defendant also did not object to the admission of the State's restitution worksheet. "Furthermore, the worksheet was an unsworn statement by a prosecutor and as such does not constitute evidence and cannot support the amount of restitution recommended." *McNeil*, 209 N.C. App. at 668, 707 S.E.2d at 684 (citation omitted). On appeal, the State concedes that the record fails to show that the State introduced any evidence to support the requested amount of restitution.

Since a restitution worksheet alone is insufficient to support an order of restitution, and since the State concedes that the record on appeal fails to show that the State introduced any evidence to support the requested amount of restitution, we remand to the trial court to reconsider the amount of restitution. *See McNeil*, 209 N.C. App. at 668, 707

S.E.2d at 685 (vacating and remanding the portion of the judgment ordering restitution where the State failed to present evidence of the appropriate amount of restitution).

## IV. Conclusion

Since there was more than sufficient evidence presented to indicate that defendant was the aggressor in the encounter with Ross, the trial court properly instructed and allowed the jury to determine whether defendant was entitled to the rule of self-defense. Therefore, defendant's argument regarding plain error fails. However, the State failed to provide evidence to support the amount of restitution. Therefore, we hold that there was no error in defendant's trial, but that the matter be remanded to reconsider the amount of restitution.

No error; remand for reconsideration of restitution.

Judges STEELMAN and McCULLOUGH concur.

Report per Rule 30(e).