ELMORE, Judge.
 

 *617
 
 Defendant Britton Darrell Buchanan appeals from judgments entered upon jury verdicts finding him guilty of assault with a deadly weapon inflicting serious injury, assault with a deadly weapon, and assault by pointing a gun. On appeal, defendant contends the trial court erred by omitting the essential element of "without legal justification" from its final mandate to the jury on the charge of assault by pointing a gun, by denying his motion to dismiss all the charges against him due to insufficient evidence to rebut his claim of self-defense, and by ordering restitution in an amount not supported by the evidence adduced at trial or sentencing. For the reasons stated herein, we dismiss in part, find no error in part, and vacate in part and remand.
 

 Background
 

 This appeal arises out of a physical altercation that took place in a Walmart parking lot on 20 March 2014.
 

 Robert Noeth was picking up his aunt's prescription that afternoon when he encountered defendant inside the store. At the time, Robert's father James was living with defendant's ex-girlfriend, and Robert and defendant had a recent history of "trouble on the phone with text messages." While Robert was standing in the pharmacy line, defendant approached him from behind, poked him in the back, and stated, "you still running your mouth. I got something for you." Defendant then went outside to wait for Robert in the parking lot, while Robert used the pharmacist's phone to call his father.
 

 *618
 
 Security cameras recorded what happened next, and several eyewitnesses testified at trial. Robert's aunt, Rhonda Yates, had been waiting in the parking lot while Robert went inside the store to pick up her prescription. Yates was sitting on Robert's truck tailgate with defendant-who had parked his vehicle next to Robert's-when James Noeth, Skylar
 
 *706
 
 Windham, and Andy Hicks arrived in a black SUV. Additionally, Fallon Hargenrader and her husband Jason had just finished shopping and were sitting in their car nearby, and Debbie Tulloch was walking through the parking lot toward defendant.
 

 Robert was still inside the store when James, Windham, and Hicks arrived. James stopped the SUV directly in front of Yates and defendant, who immediately retrieved a gun from his vehicle. As the three men exited the SUV, defendant approached Windham first and pointed the gun directly in Windham's face, poking him in the eye. Defendant then moved on to James, who he pistol-whipped in the face before being intercepted by Hicks, who in turn hit defendant with a baseball bat.
 

 A scuffle for the gun ensued after Hicks hit defendant with the bat. As the fighting slowed, defendant returned the gun to his vehicle and retrieved an axe handle instead. Defendant proceeded to knock James unconscious with the axe handle before swinging it repeatedly at Hicks and Robert, who by that time had come outside. Hicks and Windham eventually tackled defendant to the ground, and Robert kicked defendant to prevent him from getting up again. Defendant's jaw was broken in seven places and five of his teeth were knocked out during the altercation, which lasted approximately ten minutes. James was airlifted to UNC Hospital and remained there for three to four days.
 

 As a result of the events described above, defendant was indicted on two counts of assault with a deadly weapon inflicting serious injury against James and Hicks and one count of assault by pointing a gun against Windham. Defendant was tried jointly with Hicks, who was indicted on one count of assault with a deadly weapon inflicting serious injury against defendant.
 

 Eleven witnesses-including defendant and Hicks-testified at trial, and video footage captured by the security cameras was played for the jury during Windham's testimony, which was consistent with the video. The video showed defendant sitting on Robert's tailgate in the parking lot; retrieving the gun from his vehicle prior to the three men exiting the SUV; approaching Windham and pointing the gun in his face; approaching James and pistol-whipping him in the face; being struck by Hicks with the bat; getting an axe handle from his vehicle as
 
 *619
 
 the fighting slowed; and hitting James in the head with the axe handle before turning it on Hicks and Robert.
 

 On cross-examination by Hicks's attorney, defendant admitted to retrieving the loaded gun from his vehicle before James, Windham, or Hicks even opened the doors of the SUV. Defendant explained that he could see "the white in [the men's] eyes" and knew he was in trouble; he further claimed to have feared for his life.
 

 At the close of the State's evidence, defendant made a motion to dismiss the charges against him on the grounds that the State "did not present substantial evidence that he did not act in self-defense." The trial court denied defendant's motion to dismiss, which was properly renewed and again denied at the close of all the evidence.
 

 At defendant's request, the trial court instructed the jury using the pattern jury instructions for the offense of assault by pointing a gun as well as for the legal justification of self-defense. The trial court began its charge by instructing the jury that the State was required to prove two things beyond a reasonable doubt: first, that defendant "pointed a gun at Skylar Windham," and second, that defendant "acted intentionally and without justification or excuse." The trial court continued:
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant intentionally pointed a gun at Skylar Windham, nothing else appearing, it would be your duty to return a verdict of guilty. If you do not so find or you have a reasonable doubt as to one or both of these things, it would be your duty to return a verdict of not guilty.
 

 Even if you are satisfied beyond a reasonable doubt that the defendant committed
 
 *707
 
 an assault by pointing a gun, you may return a verdict of guilty only if the State has also satisfied you beyond a reasonable doubt that the defendant did not act in self-defense. Therefore, if the defendant did not reasonably believe that the defendant's action was necessary or appeared to be necessary to protect the defendant from bodily injury or offensive physical contact, or the defendant used excessive force, or the defendant was the aggressor, the defendant's actions would not be excused or justified in defense of the defendant. If you do not so find or you have a reasonable doubt that the State has proved any of these things, then the defendant's
 
 *620
 
 actions would be justified by self-defense and it would be your duty to return a verdict of not guilty.
 

 Defendant did not object to any portion of the jury charge or omission therefrom prior to the jury retiring for deliberations.
 

 While the jury was unable to reach a verdict as to Hicks, it found defendant guilty of assault with a deadly weapon inflicting serious injury against James, assault with a deadly weapon against Hicks, and assault by pointing a gun against Windham. The trial court sentenced defendant to 22 months' incarceration, suspended on the condition that he serve 36 months' supervised probation and spend 30 days in jail, pay the requisite jail fees, and not threaten or assault the complaining parties.
 

 As to restitution, James testified at the sentencing hearing that he had outstanding medical bills in the amount of $10,260.00 as a result of defendant's conduct. A bill from UNC Hospital dated 7 April 2014 was presented as a five-page fax dated 24 August 2016, which James testified to requesting in preparation for trial. Defendant did not object to the bill being admitted into evidence, but he did argue that the amount still outstanding was not up-to-date; it was also unclear what, if any, portion of the bill had been covered by insurance. The trial court thus held the issue of restitution open to determine if a more recent bill could be obtained. In the meantime, defendant entered written notice of appeal.
 

 On 5 December 2016, the trial court reconvened for a follow-up hearing to address the sole remaining issue of restitution. James was present at that hearing as well, but he did not testify. The State informed the trial court that "as late as October 28, [they] were receiving the same faxed materials regarding UNC Hospital in terms of the $10,000.00. [They] also had, on behalf of the doctors, [an outstanding bill] in the amount of $1,947.80." The State explained that it had later determined the $10,000.00 amount had been "written off" by both UNC Hospital and its collection agency; thus, the only remaining bill was from UNC doctors in the amount of $1,962.80, including interest. The State further explained that the doctors' bill had been turned over to a separate collection agency and had not been written off. However, no testimony or documentation was presented as to the doctors' bill.
 

 In addition to the conditions set forth in its initial sentencing judgment, the trial court ordered at the follow-up hearing that defendant pay restitution in the amount of $1,962.80. Defendant gave oral notice of appeal from that ruling.
 

 *621
 

 Discussion
 

 On appeal, defendant argues the trial court erred by (I) omitting the phrase "without legal justification" from its final mandate to the jury for the offense of assault by pointing a gun; (II) denying defendant's motion to dismiss, where defendant contends the State's evidence showed he acted in self-defense following a violent assault; and (III) ordering restitution in the amount of $1,962.80.
 

 I.
 
 Jury Instructions
 

 Defendant first contends the trial court erred by omitting the essential element of "without legal justification" from the mandate portion of the pattern jury instructions for assault by pointing a gun. He argues further that the trial court should not have
 
 *708
 
 included the phrase "nothing else appearing" in the mandate. Defendant asserts that "[b]ecause the jury may have acted on the incorrect part of the instructions, [he] must receive a new trial on this charge."
 

 "A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict[.]" N.C. R. App. P. 10(a)(2) ;
 
 see also
 

 State v. Schiro
 
 ,
 
 219 N.C. App. 105
 
 , 115,
 
 723 S.E.2d 134
 
 , 141 (2012).
 

 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C. R. App. P. 10(a)(4).
 

 Defendant here failed to object to the jury instructions at trial. In his brief, defendant ignores this failure, asserting simply that "[w]here a defendant requests and the trial court agrees to give a pattern jury instruction, any error in the actual instruction is reviewed
 
 de novo
 
 ." Defendant does not contend on appeal that the alleged error in the jury instructions amounts to plain error.
 

 Because defendant failed to properly preserve this issue for appellate review by lodging an objection at trial, and because defendant has failed to specifically and distinctly allege plain error, we dismiss this portion of defendant's appeal.
 
 See
 

 *622
 

 State v. Goss
 
 ,
 
 361 N.C. 610
 
 , 622,
 
 651 S.E.2d 867
 
 , 875 (2007) (holding that defendant had waived an alleged constitutional error by failing to object at trial or to assign plain error on appeal).
 

 II.
 
 Motion to Dismiss
 

 Defendant next contends the trial court erred in denying his motion to dismiss the charges against him due to insufficiency of the evidence. Defendant asserts that "the State's own, credible evidence showed he acted in self-defense after he was violently assaulted." Defendant relies primarily on
 
 State v. Johnson
 
 ,
 
 261 N.C. 727
 
 ,
 
 136 S.E.2d 84
 
 (1964), to support his argument that because the State's evidence tended only to exculpate defendant, his motion to dismiss should have been granted.
 

 We review the trial court's ruling on a motion to dismiss
 
 de novo
 
 .
 
 See
 

 State v. Scott
 
 ,
 
 356 N.C. 591
 
 , 595,
 
 573 S.E.2d 866
 
 , 868 (2002). When reviewing a challenge to the denial of a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, the relevant inquiry is "whether the State presented 'substantial evidence' in support of each element of the charged offense."
 
 State v. Chapman
 
 ,
 
 359 N.C. 328
 
 , 374,
 
 611 S.E.2d 794
 
 , 827 (2005). "In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence."
 
 State v. Abshire
 
 ,
 
 363 N.C. 322
 
 , 328,
 
 677 S.E.2d 444
 
 , 449 (2009) (citations and internal quotation marks omitted). Further, a " 'substantial evidence' inquiry examines the sufficiency of the evidence presented but not its weight."
 
 State v. McNeil
 
 ,
 
 359 N.C. 800
 
 , 804,
 
 617 S.E.2d 271
 
 , 274 (2005) (citations omitted). Thus, "if there is substantial evidence-whether direct, circumstantial, or both-to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied."
 
 Id
 
 . (citations, internal quotations marks, and brackets omitted).
 

 In
 
 State v. Johnson
 
 , the defendant was convicted of manslaughter for stabbing a man after he broke open the door of her home and attempted to grab her.
 
 261 N.C. at 729
 
 ,
 
 136 S.E.2d at 86
 
 . At trial, the defendant had testified that the man had physically assaulted her earlier on the day of the stabbing as well as three or four months prior, had been told to leave the defendant's home and to stay away, and had been drinking.
 
 Id
 
 . Witnesses corroborated the defendant's testimony, and the State presented no contradictory evidence. Nevertheless, the trial court denied the defendant's motion to dismiss.
 

 Id.
 

 *709
 
 In reversing the defendant's conviction, our Supreme Court in
 
 Johnson
 
 held that "[w]hen the State introduces in evidence exculpatory
 
 *623
 
 statements of the defendant which are not contradicted or shown to be false by any other facts or circumstances in evidence, the State is bound by these statements."
 
 Id.
 
 at 730,
 
 136 S.E.2d at 86
 
 . Furthermore, "[w]hen the State's evidence and that of the defendant is to the same effect and tends only to exculpate the defendant, motion for nonsuit should be allowed."
 
 Id
 
 . Thus, because the evidence in
 
 Johnson
 
 tended only to show that the defendant "had the right to stand her ground, protect her person, [and] prevent the invasion of her home," the trial court erred in denying the defendant's motion to dismiss.
 

 Id.
 

 The instant case is readily distinguishable from
 
 Johnson
 
 in that the evidence here did not tend only to exculpate defendant. Rather, defendant's own testimony-regardless of the fact that he claimed to have feared for his life-demonstrated that he was waiting for Robert in the parking lot and retrieved a loaded gun from his vehicle before James, Windham, or Hicks even opened the doors of the SUV. Moreover, multiple witnesses testified and video footage tended to show that defendant acted as the aggressor. Thus, because there was substantial evidence to contradict defendant's claim of self-defense, the trial court did not err in denying defendant's motion to dismiss.
 

 III.
 
 Amount of Restitution
 

 In his final argument on appeal, defendant contends there was insufficient evidence to support the trial court's restitution award in the amount of $1,962.80 to compensate James Noeth for medical expenses. Defendant asserts that the State offered no evidence at all-through testimony or documentary submission-to support the unsworn statements of the prosecutor indicating that a collection agency was still seeking payment from James.
 

 Even absent an objection, awards of restitution are reviewed
 
 de novo
 
 .
 
 State v. McNeil
 
 ,
 
 209 N.C. App. 654
 
 , 667,
 
 707 S.E.2d 674
 
 , 684 (2011). The restitution award does not have to be supported by specific findings of fact or conclusions of law, and the quantum of evidence needed to support the award is not high.
 
 State v. Davis
 
 ,
 
 167 N.C. App. 770
 
 , 776,
 
 607 S.E.2d 5
 
 , 10 (2005). Rather, when there is some evidence that the amount awarded is appropriate, it will not be overruled on appeal.
 
 Id
 
 .
 

 Although the quantum of evidence needed to support a restitution award is not high, the amount awarded nevertheless "must be supported by evidence adduced at trial or at sentencing."
 
 State v. Moore
 
 ,
 
 365 N.C. 283
 
 , 285,
 
 715 S.E.2d 847
 
 , 849 (2011) (citation and quotation marks omitted). "[A] restitution worksheet, unsupported by testimony or documentation, is insufficient to support an order of restitution."
 
 Id
 
 . (citation
 
 *624
 
 omitted). Unsworn statements of a prosecutor are also insufficient.
 
 McNeil
 
 ,
 
 209 N.C. App. at 668
 
 ,
 
 707 S.E.2d at 684
 
 . When no evidence supports the award, the award of restitution will be vacated, and the typical remedy is to remand the restitution portion of the sentence for a new sentencing hearing.
 

 Id.
 

 (remanding when there was evidence of physical damage to victim's property but no evidence as to appropriate amount of restitution);
 
 see also
 

 State v. Hunt
 
 , --- N.C. App. ----, ----,
 
 792 S.E.2d 552
 
 , 563 (2016).
 

 Here, the transcripts from both the initial sentencing hearing and the follow-up hearing indicate that the trial court's restitution award was not supported by the evidence.
 

 While James testified at the sentencing hearing and was present at the follow-up hearing, his testimony concerned only the UNC Hospital bill in the approximate amount of $10,000.00. Based on his testimony, James knew very little about the status of the bill or his insurance coverage. The only documentation submitted to the trial court at either hearing consisted of the faxed and outdated bill from UNC Hospital, which the State later determined had been "written off." No testimony or documentation was submitted to support an award based on the UNC doctors' bill.
 

 *710
 
 Because there was no evidence adduced at trial or sentencing to support the trial court's restitution award of $1,962.80, we vacate the award and remand the restitution portion of defendant's sentence for a new sentencing hearing.
 

 Conclusion
 

 As defendant neither objected to the jury instructions at trial nor alleges plain error in his brief, he has waived appellate review of this issue. Additionally, because there was substantial evidence to contradict defendant's claim of self-defense, the trial court did not err in denying his motion to dismiss. Lastly, because the State's evidence failed to support the trial court's restitution award of $1,962.80, we vacate the award and remand the restitution portion of that judgment for a new sentencing hearing.
 

 DISMISSED IN PART; NO ERROR IN PART; VACATED IN PART AND REMANDED.
 

 Judges TYSON and ZACHARY concur.