STATE OF NORTH CAROLINA v. MELVIN GRANT TEW AND BONNIE TEW

No. 822SC782

(Filed 17 May 1983)

**Arson and Other Burnings § 4.2 — burning a building — insufficient evidence**

The evidence was insufficient to convict defendants of burning a building used in trade in violation of G.S. 14-62 where the State failed to place either defendant at or near the scene of the building during the day and a half that preceded the fire; failed to show that there were fruits of the crime, much less connect the defendants with them; and failed to connect them with the criminal device or method used in perpetrating the burning.

APPEAL by defendants from *Small, Judge.* Judgment entered 27 February 1982 in Superior Court, WASHINGTON County. Heard in the Court of Appeals 21 January 1983.

Defendants, husband and wife, were convicted by a jury of burning a building used in trade in violation of G.S. 14-62. Grant Tew, also tried for presenting a false insurance claim, obtained a dismissal of that charge at the close of the State's case. The evidence, essentially without conflict, was to the following effect:

In a leased, one-story building with a partial loft on one side, the defendants operated a business near the Town of Plymouth known as "The Loft." A sort of tavern, the business sold beer, had coin-operated games and machines of all kinds, and occasionally presented live entertainment; it was closed on Sundays and Mondays. At approximately 1:43 o'clock Tuesday morning, September 29, 1981, a passerby saw that the building was on fire; the Plymouth Fire Department was notified and the fire, which had not gotten underway very well, was extinguished in less than fifteen minutes. The fire was clearly of incendiary origin. At one end of the building in a storeroom area, it was burning, but not brightly; at the other end on the bathroom floor there was an ashtray with three cigarettes, which had been, but were not then, lit in it, and each cigarette was taped to a paper trailer that had matches affixed to it. This device or arrangement, completely surrounded by paper towels, apparently failed to work because the cigarettes went out before igniting the matches and papers. The outside doors to the building were all locked, had not been noticeably tampered with, and the defendants had the only known keys. The windows on the ground or first level of the building were all covered by iron bars that were still in place. The second level or loft windows were not barred.

During their investigation, the officers noted that some of the coin-operated machines had been pried open and the money boxes were empty; latent fingerprints removed from these machines did not belong to either defendant. Many pictures of the building, both inside and out, were taken, and the next day Grant Tew called the chief investigating officer's attention to a picture that showed an open second story window with a window shade, peculiarly streaked, hanging out of it. Mr. Tew expressed the opinion to the officer that someone had entered the building

through that window, theorized about how the streaking might have been caused by the smoke, asked the officer "to work as hard for me as you do against me," and specifically requested that the window's condition and the cause of it be investigated. But that admittedly was not done, though the officer later observed the window from the parking lot, and no evidence relating thereto was offered. Nor was any evidence presented as to how long the fire in the storeroom area had been burning when it was discovered, or how long the incendiary device in the bathroom could burn after being lit before igniting the matches and paper, or as to either defendant knowing anything about, or having ever made or used, an incendiary device of any kind.

The Loft was between a mile and a half and two miles from their home and there was no evidence at all that either defendant was in or near the building at any time during the day or night preceding the fire. The only evidence that they were there on Sunday, two days before the fire, was Mr. Tew's testimony and statement that he went there that afternoon to get some beer to take home, and Mrs. Tew's testimony that she went there to pick up some articles needed for a meeting of their daughter's high school class Monday night in their garage. The purpose of that meeting was to construct a float, and it was attended by twenty or thirty students, a schoolteacher, assistant principal, principal, and several parents.

Both defendants testified that they were at or near their home all day and night Monday, partially because they had the day off and partially because of the float-building project, which they helped on by cleaning up the garage, getting the trailer for the float into it, and by supplying and serving refreshments to those present. They also testified that they had nothing to do with the fire, had not been to "The Loft" for a day and a half before it, were still at home when the fire department telephoned, and that immediately after receiving the call Grant Tew went to the fire and cooperated, as requested by the officials. The defendants' testimony about being at home all Monday evening and night was corroborated by several witnesses.

The defendants had been having financial difficulties for several months and were behind in their rent and other bills. About ten days before the fire, Grant Tew obtained an insurance

policy on the contents of the building in the amount of $30,000; getting such a policy had been discussed with his insurance broker several times during the preceding year or so.

*Attorney General Edmisten, by Assistant Attorney General W. Dale Talbert, for the State.*

*Trimpi, Thompson & Nash, by C. Everett Thompson, for defendant appellants.*

PHILLIPS, Judge.

Though the evidence of record certainly points the finger of suspicion at the defendants, it is not sufficient, in our opinion, to justify their conviction of the offense charged, and the case against them must be dismissed. This is because the record, even when favorably viewed for the State, as our law requires on motions to dismiss, *State v. Cummings*, 301 N.C. 374, 271 S.E. 2d 277 (1980), does not contain substantial evidence of every essential element of the crime charged. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

The essential elements of the crime that the defendants were tried for, and that the State had the burden to prove, are that: (1) The building was used in trade; (2) a fire occurred in it; (3) the fire was of incendiary origin; and (4) the defendants unlawfully and wilfully started or were responsible for it. G.S. 14-62. The record is replete with evidence as to all these elements but one—the defendants' responsibility for the fire. As to that most important element, the evidence falls short of the standard that our law sets in matters of this kind.

The main reason that the evidence fell short, of course, was the State's inability to place either defendant at or near the scene of the crime at any time when the fire could have been started. When that time was, even approximately, the evidence does not show; but nothing about the fire would justify a finding that it could have been started more than an hour or two before it revealed itself. And that there was no evidence that either of the defendants had been near the place during the preceding day and a half or were otherwise connected with the fire in any way is fatal to the State's case. This is a void that proof of the other elements of the crime cannot fill. That there was a fire and that it

was of incendiary origin does not prove or tend to prove that either of these defendants was the incendiary. *State v. Needham*, 235 N.C. 555, 71 S.E. 2d 29 (1950). Nor was this missing element established by proof of motive. Though motive evidence in arson and other burning cases can be highly probative and persuasive when it supplements evidence of a criminal scheme, plan or act, when such essential evidence is lacking, as it is here, motive evidence has no probative value. *State v. Needham, supra.* Which is as it should be, since many more people have motives to commit crimes than ever commit them and innumerable people often have a motive to commit a crime that only one perpetrates.

The State's contention that this gap in the proof was bridged by evidence showing that only the defendants could have perpetrated the crime and that they did certain things from which their criminal scheme and act can be inferred, if supportable as a legal proposition, which is doubtful and no legal authorities close to the point were cited, is not supported by the record. The evidence that after the fire the street level doors and windows of the building were still secure and apparently had not been tampered with and that defendants had the only keys does not justify the inference that only the defendants could have entered the building — (and in view of the myriad unexplained criminal entries that occur in this country every year, it may not justify the inference that they were the only ones that could have entered at street level) — since the loft window was admittedly open and that possible entry place was not even investigated, much less eliminated, by the officers.

In contending that the defendants' criminal plan and act could be inferred from evidence that they "overinsured" the contents of the building by obtaining a $30,000 policy, the State's brief points not to testimony as to the *value* of the contents in either their damaged or undamaged state, but only to the irrelevant testimony of an insurance adjuster to the effect that the contents could be *cleaned* for between $3,000 and $5,000, smoke staining being the only damage done. Thus, the fact of "overinsurance," like other facts essential to the State's case, stands unproven.

The State's further contention that the defendants' criminality is inferable from the fact that, incompatible with their con-

tinued operation of the business, they removed many articles from the building before the fire likewise fell of its own weight. Instead of depleting the place of its contents or removing articles of considerable value that were needed at the business and not at home, evidence of which might have cast things in a different light, the only articles removed from "The Loft" before the fire, according to the evidence, were a red sofa, which, according to defendants' uncontradicted testimony, was in the way and had been needed at home for a long time and that from aught that the record shows had no significant value, some soft drinks, paper cups and ice needed for a school social, and a broom and vacuum cleaner to clean out the garage where the social was held. Under our law criminal acts and schemes cannot be inferred from such insubstantial and apparently innocuous acts.

Nor were the inadequacies of the evidence against them remedied by the "acting in concert" principle, erroneously contended for by the State and charged on to the jury by the court. Though "acting in concert" is a perfectly good principle of law, long recognized and applied by our courts to properly reduce the quantum of proof as to some defendants in suitable instances, its use here was singularly inappropriate. This principle justly enables one to be found guilty of an offense if he is "present at the scene of the crime and the evidence is sufficient to show he was acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Joyner*, 297 N.C. 349, 357, 255 S.E. 2d 390, 395 (1979); quoted with approval in *State v. Cox*, 303 N.C. 75, 86, 277 S.E. 2d 376, 383 (1981). But here, so far as the record reveals, there was neither action nor concert in regard to anything criminal. Neither defendant was shown to be present at the criminal scene; neither defendant was shown to have committed the criminal act or any part of it; and no common plan or purpose to burn the building was shown.

Though a different crime was involved, what the Supreme Court said in *State v. Burton*, 272 N.C. 687, 691, 158 S.E. 2d 883, 887 (1968) is strikingly applicable here:

> In the instant case the State fails to place defendants at or near the scene of the crime on the date the crime was committed; fails to show any of the "fruits of the crime" in

the possession of either defendant, and relies solely upon possession of a crowbar used by someone in the commission of the crime to show "substantial evidence of all material elements of the offense." True, the evidence is sufficient to put the instrument used at the scene of the crime, but whether one of the defendants, or both of the defendants, or either of the defendants was the person or persons who on or about 17 January 1967 "unlawfully and wilfully and feloniously did, by the use of a crowbar and other tools, force open a safe of General Electric Supply Company . . ." remains in the realm of speculation and conjecture.

Here the State failed to place either defendant at or near the scene of the fire during the day and a half that preceded it; failed to show that there were any fruits of the crime, much less connect the defendants with them; and failed, unlike in *Burton,* to connect them with the criminal device or method used in perpetrating the burning. And, as the court did there, we cannot but conclude that whether either of the defendants, or both of them, or someone else, was the person or persons that set fire to "The Loft" September 29, 1981 has not been judicially established, but still "remains in the realm of speculation and conjecture."

Our belief that this case ought to be dismissed is bolstered by the Supreme Court's like action in two burning cases that were based on much stronger evidence than is recorded here. In *State v. Needham,* 235 N.C. 555, 565, 71 S.E. 2d 29, 36 (1952), ". . . the defendant's car was seen parked near the tobacco barn before the fire and . . . it was not seen there after the fire was discovered and . . . people along the road saw him drive in the opposite direction about the time the smoke from the fire was first seen." In *State v. Blizzard,* 280 N.C. 11, 184 S.E. 2d 851 (1971), the evidence was that: A fire began outside of the house and there was an odor of gasoline on the ground around the house; before the fire an automobile similar to the defendant's was seen about a mile from the dwelling; the defendant had bought a gallon jug of gasoline a week before the fire and a gallon jug was found in defendant's car after the fire; and tracks made by the defendant's boots were found beside the road about sixty feet from the burned house. In dismissing the case the court pointed out that no criminal inference could be drawn from the jug of gasoline, which many people have for lawnmowers and other machines, and

that the defendant's explanation as to the presence of the automobile and the tracks made by his boots clarified, rather than contradicted, the State's evidence.

That somebody violated the statute in burning the building in question, there can be no doubt. But since the humanity of our law requires that the "all-important question whether the culprit was the defendant or somebody else," *State v. Wooten,* 239 N.C. 117, 79 S.E. 2d 254 (1953), not be left to conjecture and surmise, the convictions and sentences of the court below must be vacated, and judgments of acquittal entered pursuant to their motions for a directed verdict, which were erroneously denied.

Reversed.

Judges WEBB and BECTON concur.