BRYANT, Judge.
 

 *239
 
 Where the language of the indictment was sufficient to charge defendant with burning certain buildings, the trial court properly exercised jurisdiction over the matter. Where defendant cannot establish plain error, his challenge that the trial court abandoned its gatekeeping function must fail. Likewise, where defendant cannot establish prejudice, his ineffective assistance of counsel claim must also fail. However, where the amount of restitution awarded was not supported by the evidence, we remand to the trial court for further proceedings.
 

 On 6 January 2014, a Durham County grand jury indicted defendant C.D. Hunt on the charge of burning certain buildings, in violation of General Statutes, section 14-62. The matter came on for trial during the 23 March 2015 criminal session of Durham County Superior Court, the Honorable James Roberson, Judge presiding.
 

 The evidence presented at trial tended to show that on 29 May 2013, Diane Stallworth, apartment complex property manager for Lynnhaven Apartments located in Durham, North Carolina, reported a break-in of apartment 7C. In addition to the Durham Police Department, Stallworth contacted the apartment resident, LaTresha Harwell, and requested that she return to the complex. At 1:00 p.m. that afternoon, Stallworth was in apartment 7C when defendant C.D. Hunt arrived. "[H]e came driving
 
 *240
 
 his vehicle. He came across the property, drove the vehicle right up into the front door of the apartment and came inside the apartment." Stallworth described defendant's mood as "angry or upset." Stallworth asked defendant to remove his car, a gray four-door Nissan, from the grass and take it back to the parking lot, but defendant refused to talk with her. Defendant was not a resident of the apartment complex, but was listed as the emergency contact for Harwell, and had been observed with Harwell on a near-daily basis. When Stallworth returned to the apartment complex office, she observed defendant drive his car to the parking lot in front of the office and begin throwing trash from his car onto the grass in front of the building. Stallworth asked defendant to stop and he replied.
 

 He said somebody broke in to my apartment. All you care about is me throwing trash. ...
 

 We continued to go back and forth. It was, "You got the right one", you know, and he kind of lunged at me like he was going to hit me, so I was like, "Come on. Hit me".
 

 ...
 

 ... It was not a friendly exchange of words.
 

 Following this interaction, a law enforcement officer arrived in response to an apartment break-in report. While he was still there, Stallworth issued defendant a "trespassing letter" informing him he was not welcome back on the property. Early the next morning, on 30 May 2013, Stallworth received a call notifying her of a fire reported at the Lynnhaven Apartments complex office building.
 

 *556
 
 After the fire was extinguished, Investigator Joel Gullie, with the Fire Prevention Bureau, Fire Marshal's Office, City of Durham Fire Department, arrived on the scene. He had been called to the scene by the battalion chief in command on the basis that the fire was "suspicious." Investigator Gullie testified that he was the lead investigator, and his observations led him to conclude that an accelerant had been used.
 

 On 3 June 2014, the investigation of the fire was assigned to Durham Police Department Officer James Barr, Jr., who was working in the criminal investigation, homicide division. Stallworth provided Officer Barr with video surveillance recorded around the time of the fire which showed "a small lighter-colored four-door sedan," which had been parked in a dead end with no parking spaces, leaving the apartment complex at a high rate of speed just before an explosion was recorded. No other vehicles were recorded leaving the lot at that time. Officer Barr
 
 *241
 
 testified that during his conversation with Stallworth, she informed him that on the day of the break-in and trash-throwing incident, defendant was driving a charcoal-colored Nissan Altima. Officer Barr also reviewed the 9-1-1 call reporting the fire made by Delanem Makara. Officer Barr spoke with Makara, who informed him that she was outside of her apartment on the night of the fire. That night, she noticed a dark gray vehicle parked "all the way down at the end." "[S]he noticed the smell of gasoline; [t]hen, there was an explosion."
 

 At trial, Makara read the handwritten statement she gave to a Durham Police Officer at 2:30 a.m. on 30 May 2013:
 

 A. "About 2:30 a.m. May 30, I seen a gray or black car Nissan pulled in, went to the other end of the parking lot, and I did not see the car leave. Around 3:20, the fire happened", and my signature.
 

 Q. And there is a notation off to the side in the margin?
 

 A. Yes.
 

 Q. And what does that say?
 

 A. [Defendant] is the driver.
 

 Q. There's an arrow there?
 

 A. It's a Nissan.
 

 Following the close of the State's evidence, defendant proffered the testimony of his grandmother, also a Durham resident, who testified in substance that defendant stayed with her the evening of 29-30 May 2013 and that he did not leave.
 

 Q. And how do you know that he didn't leave?
 

 A. Because I've been sleeping on my sofa, and that's between my living room and my side door ... so anybody come in the house and go out the house, I would know about it.
 

 Following the close of all of the evidence, the jury returned a guilty verdict against defendant for burning certain buildings. The trial court entered judgment in accordance with the jury verdict and sentenced defendant to an active term of 16 to 29 months, then suspended the sentence and imposed supervised probation for a period of 36 months. Defendant was ordered to pay $5,000 in restitution to Lynnhaven Apartments. Defendant appeals.
 

 *242
 
 _________________________
 

 On appeal, defendant raises the following issues: whether (I) the indictment against defendant was fatally defective; (II) the trial court committed plain error by admitting testimonial evidence regarding how the fire started; (III) defendant had ineffective assistance of counsel; and (IV) the trial court erred in ordering restitution.
 

 I
 

 Defendant argues the trial court lacked jurisdiction to try him for a violation of General Statutes, section 14-62 where the indictment charging him was fatally defective. Defendant contends that the indictment charging a violation of section 14-62 failed to contain an essential element that defendant "wantonly" set fire to burn, and therefore, the indictment is fatally defective. We disagree.
 

 "On appeal, we review the sufficiency of an indictment
 
 de novo
 
 ."
 

 *557
 

 State v. McKoy
 
 ,
 
 196 N.C.App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009) (citation omitted).
 

 "An indictment is sufficient if it charges all essential elements of the offense with sufficient particularity to apprise the defendant of the specific accusations against him and (1) will enable him to prepare his defense and (2) will protect him against another prosecution for that same offense."
 
 State v. Bowden
 
 ,
 
 272 N.C. 481
 
 , 483,
 
 158 S.E.2d 493
 
 , 495 (1968) ;
 
 see also
 
 N.C.G.S §§ 15-153 ("Bill or warrant not quashed for informality") and 15A-924(a)(5) (2015) ("Contents of pleadings...."). "The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words."
 
 State v. Simpson
 
 ,
 
 235 N.C.App. 398
 
 , 400-01,
 
 763 S.E.2d 1
 
 , 3 (2014) (quoting
 
 State v. Greer
 
 ,
 
 238 N.C. 325
 
 , 328,
 
 77 S.E.2d 917
 
 , 920 (1953) ). "A facially invalid indictment deprives the trial court of jurisdiction to enter judgment in a criminal case."
 
 State v. Haddock
 
 ,
 
 191 N.C.App. 474
 
 , 476,
 
 664 S.E.2d 339
 
 , 342 (2008) (citing
 
 State v. Call
 
 ,
 
 353 N.C. 400
 
 , 429,
 
 545 S.E.2d 190
 
 , 208 (2001) ). But "[t]he trial court need not subject the indictment to hyper technical scrutiny with respect to form."
 
 Simpson
 
 ,
 
 235 N.C.App. at 400
 
 ,
 
 763 S.E.2d at 3
 
 (citation and quotation marks omitted).
 

 Pursuant to North Carolina General Statutes, section 14-62, "[i]f any person shall
 
 wantonly
 
 and
 
 willfully
 
 set fire to or burn ... any ... warehouse, office, shop ... [or other specified building] whether the same or any of them respectively shall then be in the possession of the offender,
 
 *243
 
 or in the possession of any other person, he shall be punished as a Class F felon."
 
 N.C. Gen. Stat. § 14-62
 
 (2015).
 

 "Willfulness" means the wrongful doing of an act without justification or excuse.
 
 State v. Arnold
 
 ,
 
 264 N.C. 348
 
 ,
 
 141 S.E.2d 473
 
 (1965) ;
 
 State v. Williams
 
 ,
 
 284 N.C. 67
 
 ,
 
 199 S.E.2d 409
 
 (1973). "Wantonness" means the doing of an act in conscious and intentional disregard of and indifference to the rights and safety of others.
 
 Hinson v. Dawson
 
 ,
 
 244 N.C. 23
 
 ,
 
 92 S.E.2d 393
 
 (1956). "The attempt to draw a sharp line between a 'willful' act and a 'wanton' act ... would be futile. The elements of each are substantially the same."
 
 State v. Williams
 
 ,
 
 supra
 
 ,
 
 284 N.C. at 73
 
 ,
 
 199 S.E.2d at 412
 
 .
 

 State v. Oxendine
 
 ,
 
 64 N.C.App. 559
 
 , 561,
 
 307 S.E.2d 583
 
 , 584-85 (1983) ;
 
 see also
 

 State v. Tew
 
 ,
 
 62 N.C.App. 190
 
 , 193,
 
 302 S.E.2d 633
 
 , 635 (1983) ("The essential elements of the crime ... are that: (1) The building was used in trade; (2) a fire occurred in it; (3) the fire was of incendiary origin; and (4) the defendants unlawfully and wilfully started or were responsible for it. G.S. 14-62.").
 

 In the instant case, the indictment alleged that "defendant ... unlawfully, willfully and feloniously did set fire to, burn, cause to be burned and aid the burning of an office and utility building located at 917 Wadesboro Street, Durham, North Carolina 27703." Defendant asserts that while the indictment alleges he acted "willfully," the failure to also allege he acted "wantonly" in setting fire to a building, renders the indictment facially invalid and fatally defective.
 

 As noted herein, our courts have held that "willfully" and "wantonly" are essentially the same, and any attempt to distinguish them would be futile.
 
 See
 

 Oxendine
 
 ,
 
 64 N.C.App. at 561
 
 ,
 
 307 S.E.2d at 584-85
 
 . Therefore, we hold the indictment in the instant case charges the essential elements of the offense in words that are substantially equivalent to those used in General Statutes, section 14-62, with sufficient particularity to apprise defendant of the specific accusations against him.
 
 See
 

 Bowden
 
 ,
 
 272 N.C. at 483
 
 ,
 
 158 S.E.2d at
 
 495 ;
 
 Simpson
 
 ,
 
 235 N.C.App. at 400-01
 
 ,
 
 763 S.E.2d at 3
 
 . As the indictment is sufficient, defendant's argument is overruled.
 

 II
 

 Next, defendant argues that the trial court committed plain error by allowing non-expert opinion testimony into evidence to prove the fire at issue was intentionally set. More specifically, defendant contends that Investigator Gullie's testimony should have been evaluated under
 
 *244
 
 the standard set out in
 
 Daubert v. Merrell Dow
 

 Pharmaceuticals, Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993), as that standard has been implemented
 
 *558
 
 in amended Rule of Evidence 702 ("Testimony by experts"), as acknowledged in
 
 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 , 884,
 
 787 S.E.2d 1
 
 (2016). Defendant contends that where the trial court admitted Investigator Gullie's opinion testimony without examining him under the
 
 Daubert
 
 standard, the court committed plain error. We disagree.
 

 In 2011, our General Assembly amended Rule 702(a) of North Carolina's Rules of Evidence, which governs the admissibility of testimony by an expert, to mirror Rule 702(a) of the Federal Rules of Evidence as that rule was amended in 2000. "It follows that the meaning of North Carolina's Rule 702(a) now mirrors that of the amended federal rule."
 
 McGrady
 
 ,
 
 368 N.C. at 884
 
 ,
 
 787 S.E.2d at 5
 
 . "And when the General Assembly adopts language or statutes from another jurisdiction, 'constructions placed on such language or statutes are presumed to be adopted as well.' "
 
 Id.
 
 at 887,
 
 787 S.E.2d at 7
 
 (quoting
 
 Sheffield v. Consol. Foods Corp.
 
 ,
 
 302 N.C. 403
 
 , 427,
 
 276 S.E.2d 422
 
 , 437 (1981) ). Thus, "the 2011 amendment [of Rule 702(a) ] adopts the federal standard for the admission of expert witness testimony articulated in the
 
 Daubert
 
 line of cases."
 
 Id.
 
 at 884,
 
 787 S.E.2d at
 
 5
 
 [1]
 

 ,
 

 [2]
 

 But though Rule 702 was amended, our Supreme Court reasoned that the precedent established by our State appellate courts prior to the 2011 amendment should not be completely abandoned. The previous three-step inquiry established for evaluating the admissibility of expert testimony, as set out in
 
 Howerton v. Arai Helmet, Ltd.
 
 ,
 
 358 N.C. 440
 
 , 458,
 
 597 S.E.2d 674
 
 , 686 (2004), while " 'decidedly less mechanistic and rigorous than the "exacting standards of reliability" demanded by the federal approach[,]' " " 'share[s] obvious similarities with the principles underlying
 
 Daubert
 
 [.]' "
 
 McGrady
 
 ,
 
 368 N.C. at 886
 
 ,
 
 787 S.E.2d at 7
 
 (quoting
 
 Howerton
 
 ,
 
 358 N.C. at 464
 
 ,
 
 597 S.E.2d at
 
 690 ). "The proper
 
 *245
 
 interpretation of Rule 702(a) remains an issue of state law[,]" and "[o]ur previous cases are still good law if they do not conflict with the
 
 Daubert
 
 standard."
 
 Id.
 
 at 888,
 
 787 S.E.2d at 8
 
 .
 

 "The qualification of a witness to give an opinion as one skilled, or, as it is usually termed,
 
 an expert
 
 , depends on matters of fact[,] and the question is addressed to the trial judge, with opportunity to the objector to test the experience of the witness by appropriate examination."
 
 State v. Smith
 
 ,
 
 221 N.C. 278
 
 , 288-89,
 
 20 S.E.2d 313
 
 , 319-20 (1942) (emphasis added) (citations omitted). "In
 
 Daubert
 
 , [the United States Supreme Court] held that ... [Rule] 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.' "
 
 Kumho Tire Co. v. Carmichael
 
 ,
 
 526 U.S. 137
 
 , 147,
 
 119 S.Ct. 1167
 
 , 1174,
 
 143 L.Ed.2d 238
 
 , 249 (1999) (quoting
 
 Daubert
 
 ,
 
 509 U.S. at 589
 
 ,
 
 113 S.Ct. at 2795
 
 , 125 L.Ed.2d ).
 
 [3]
 
 This
 
 gatekeeper
 

 *559
 
 role also applies where an expert relies "on skill- or experienced-based observation"
 
 Id.
 
 at 151,
 
 119 S.Ct. at 1176
 
 ,
 
 143 L.Ed.2d at 252
 
 (citation omitted). In his concurring opinion, Justice Scalia wrote, "[the] trial-court discretion in choosing the manner of testing expert reliability-is not discretion to abandon the gatekeeping function."
 

 Id.
 

 at 158-59
 
 ,
 
 119 S.Ct. at 1179
 
 ,
 
 143 L.Ed.2d at 256
 
 (Scalia, J., concurring). "[Yet,] the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."
 

 Id.
 

 at 152
 
 ,
 
 119 S.Ct. at 1176
 
 ,
 
 143 L.Ed.2d at 252
 
 .
 

 *246
 
 Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.
 

 Id.
 

 at 152
 
 ,
 
 119 S.Ct. at 1176
 
 ,
 
 143 L.Ed. 2d at 253
 
 .
 

 We now consider whether an unpreserved challenge to the performance of a trial court's gatekeeping function is subject to plain error review in North Carolina.
 

 Pursuant to our Rules of Appellate Procedure,
 

 [i]n criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.
 

 N.C. R. App. P. 10(a)(4) (2016);
 
 see also
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 515,
 
 723 S.E.2d 326
 
 , 332 (2012) ("Federal plain error review is applied to criminal cases in 'exceptional circumstances.' ") (citing
 
 United States v. Atkinson
 
 ,
 
 297 U.S. 157
 
 , 160,
 
 56 S.Ct. 391
 
 , 392,
 
 80 L.Ed. 555
 
 (1936) ). "Furthermore, plain error review in North Carolina is normally limited to instructional and evidentiary error."
 
 Lawrence
 
 ,
 
 365 N.C. at 516
 
 ,
 
 723 S.E.2d at 333
 
 (citation omitted);
 
 see also
 
 id.
 

 ("Like federal plain error review, the North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error."). In both federal court and North Carolina state court, the unchallenged admission of opinion testimony on a subject requiring specialized knowledge by persons not admitted as experts may be reviewed for plain error.
 
 See
 

 United States v. Diaz
 
 ,
 
 300 F.3d 66
 
 , 74 (1st Cir. 2002) ("The consequence of a party's failure to make a timely objection to the admission of expert testimony is plain error review....");
 
 State v. Maready
 
 ,
 
 205 N.C.App. 1
 
 , 17,
 
 695 S.E.2d 771
 
 , 782 (2010) (reviewing for plain error the unchallenged admission of opinion testimony regarding the cause of an accident by persons not admitted as experts in accident reconstruction). Thus, an unpreserved challenge to the performance of a trial court's gatekeeping function in admitting opinion testimony in a criminal trial is subject to plain error review in North Carolina state courts.
 

 *247
 
 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 *560
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (citations and quotation marks omitted).
 

 Here, defendant contends that the trial court committed plain error by failing to perform its gatekeeping function in accordance with the
 
 Daubert
 
 standard to determine if Investigator Gullie was qualified to provide opinion testimony as an expert in fire investigation before allowing Investigator Gullie to testify to his opinion that the fire was intentionally set. But before we further address defendant's argument, we note defendant's challenge raises some interesting issues.
 

 In challenging the trial court's performance of its gatekeeping function for plain error, defendant implicitly asks this Court to hold the trial court's failure to
 
 sua sponte
 
 render a ruling that Investigator Gullie was qualified to testify as an expert pursuant to Rule 702 amounted to error. And to accept defendant's premise would impose upon this Court the task of determining from a cold record whether Investigator Gullie's opinion testimony
 
 required
 
 that he be qualified as an expert in fire investigation, where neither the State nor defendant respectively sought to proffer Investigator Gullie as an expert or challenge his opinion before the trial court.
 

 "[W]e can envision few, if any, cases in which an appellate court would venture to superimpose a
 
 Daubert
 
 ruling on a cold, poorly developed record when neither the parties nor the nisi prius court has had a meaningful opportunity to mull the question."
 
 Cortés-Irizarry v. Corporación Insular de Seguros
 
 ,
 
 111 F.3d 184
 
 , 189 (1st Cir. 1997) (as quoted by
 
 Diaz
 
 ,
 
 300 F.3d at
 
 74 ). While "[ Rule] 702 imposes a special obligation upon a trial judge to ensure that any and all scientific testimony ... is not only relevant, but reliable,"
 
 Kumho Tire Co.
 
 ,
 
 526 U.S. at 147
 
 ,
 
 119 S.Ct. at 1174
 
 ,
 
 143 L.Ed.2d at 249
 
 (citation and quotation marks omitted), "
 
 Daubert
 
 did not work a seachange [sic] over ... evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary
 
 *248
 
 system." Fed. R. Evid. 702 (2012) (Advisory Committee notes) (citation and quotation marks omitted).
 

 [As to expert testimony governed by Rule 702,] [t]he trial court must have the same kind of latitude in deciding
 
 how
 
 to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides
 
 whether
 
 that expert's relevant testimony is reliable. ... Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases....
 

 Kumho Tire Co.
 
 ,
 
 526 U.S. at 152
 
 ,
 
 119 S.Ct. at 1176
 
 ,
 
 143 L.Ed.2d at 253
 
 .
 

 The record before us reflects that Investigator Gullie introduced himself as employed by the Fire Prevention Bureau, Fire Marshal's Office in the City of Durham Fire Department. "I have to do fire inspections as it relates to construction or fire inspection for safety inspections, and then I have to do fire investigations as well." Investigator Gullie further testified that he was the lead fire investigator at the scene on 30 May 2013. Following his introduction, Investigator Gullie testified without objection to his observations of the scene on 30 May 2013, as follows: that the fire appeared to have multiple points of origin; that shallow "crocodiling" of the wood suggested the wood burned fast and hot; and that there was an odor of a flammable liquid. Investigator Gullie testified that "[t]hat's typically a sign that accelerants were used to accelerate the fire." Investigator Gullie was neither tendered nor admitted as an expert in the field of fire investigation.
 

 It may be that the trial court acted within the latitude afforded by its discretionary authority to determine that Investigator Gullie's testimony was of an ordinary type and a reliability proceeding was not necessary, as, by virtue of his position as a fire investigator, the reliability of his testimony that accelerants were used to accelerate the fire was properly taken for granted.
 
 See
 
 id.
 

 But even if we presumed for the sake of argument that defendant established error, defendant cannot establish
 
 plain
 
 error.
 

 *561
 
 Aside from the testimony of Investigator Gullie, there was other direct and circumstantial evidence that an accelerant was used to start
 
 *249
 
 the fire. Officer Barr gave the following testimony while video surveillance recordings made around the time of the fire were played for the jury:
 

 A. ... You'll see a shadowy figure coming right here walking, a short stature; looks like a little something in the left hand, a little shiny and disappears, and it'll be three or four minutes; and then, you'll see the figure walk off, and then you'll see a flash of light after that....
 

 ...
 

 You'll see a flash that is consistent with what I know to be fire.
 

 ...
 

 That's consistent with a rapid expansion of a flammable liquid or something like that, and now you have active burning going on.
 

 ...
 

 Q. Now, Investigator Barr, I'm going to turn your attention to yet a third camera angle. ...
 

 ...
 

 Q. And what is that flashed light we just saw?
 

 A. That would be the ignition of the fire on that building. It indicates that it was just a rapid acceleration of a fire indicating that an accelerant was used.
 

 Later, Officer Barr testified that prior to working for the Durham Police Department, he was employed by the Durham City Fire Department. "I worked there for 18 years, so I have multiple certifications in the investigation of fires, hazardous material, technician specialists; hundreds and hundreds of hours of training, and hands-on and life experience in fire training, and some college in the background of fire investigations."
 

 Officer Barr also testified without objection about his interview with Makara, who had called 9-1-1 on 30 May 2013 to report the fire.
 

 A. She said she was outside her apartment that morning.
 

 ...
 

 *250
 
 Q. Did she say what else she noticed about that time?
 

 A. She said while they were outside, she noticed a smell of gasoline. Then, there was an explosion, and then the fire consumed the building and she called 911.
 

 Thus, given the unchallenged evidence in the form of direct testimony and video recordings depicting that an accelerant was used to start or accelerate the fire, we hold defendant has failed to demonstrate that any presumed error in the trial court's performance of its gatekeeping function would have had a probable impact on the jury's guilty verdict.
 
 See
 

 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at
 
 334 ;
 
 see generally
 

 Maready
 
 ,
 
 205 N.C.App. at 17
 
 ,
 
 695 S.E.2d at 782
 
 . Accordingly, defendant has failed to demonstrate plain error, and this argument is overruled.
 

 III
 

 Defendant argues he received ineffective assistance of counsel because his attorney (1) did not object to Investigator Gullie's testimony and (2) failed to renew the motion to dismiss at the close of all the evidence. Defendant argues those decisions were not strategic decisions but instead were errors that amounted to constitutionally deficient performance. Defendant then argues that if counsel had objected to the testimony and renewed the motion to dismiss, he would have either been acquitted or had a better case on appeal. We disagree.
 

 Defense counsel is given wide latitude in matters of strategy, so "the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear."
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 690,
 
 617 S.E.2d 1
 
 , 30 (2005) (citation and quotation marks omitted). There is a two-part test for succeeding on an ineffective counsel challenge:
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance
 
 *562
 
 prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Prejudice is established by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 

 *251
 

 Id.
 
 at 690,
 
 617 S.E.2d at 29-30
 
 (quoting
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687,
 
 104 S.Ct. 2052
 
 , 2064,
 
 80 L.Ed.2d 674
 
 , 693 (1984) ) (quotation marks omitted). Courts generally do not second-guess trial counsel unless the counsel's actions were unreasonable "considering the totality of the circumstances at the time of performance."
 
 See
 

 State v. Hill
 
 ,
 
 179 N.C.App. 1
 
 , 27,
 
 632 S.E.2d 777
 
 , 793 (2006). "[J]udicial review of counsel's performance must be highly deferential."
 

 Id.
 

 (citation and quotation marks omitted). There is a strong presumption that counsel's performance was reasonable and acceptable.
 
 Campbell
 
 ,
 
 359 N.C. at 690
 
 ,
 
 617 S.E.2d at 30
 
 .
 

 Failure to object to Investigator Gullie's testimony
 

 Defendant's first contention is that his counsel provided deficient performance when it failed to object to the expert opinion testimony of Investigator Gullie. Defendant argues its counsel made a critical error by not objecting and moving the trial court to examine Investigator Gullie under Rule 702, pursuant to the
 
 Daubert
 
 standard. This argument fails the test set out in
 
 Strickland
 
 and adopted in
 
 Campbell
 
 .
 

 First, defendant's theory at trial did not challenge whether the fire was intentionally set but rather whether the State proved beyond a reasonable doubt that defendant was the perpetrator. Thus, the identity of the perpetrator was defendant's main defense. This is evidenced by defendant's closing argument, which is almost exclusively about the identity of the offender. It appears trial counsel made a reasonable, strategic decision to not object to Investigator Gullie's testimony while advocating that defendant was not the perpetrator. Further, the substantial evidence that an accelerant was used to accelerate the spread of the fire could have reasonably been seen as a greater legal challenge to overcome than the identity of the perpetrator. Judicial review is highly deferential to trial counsel's strategic decisions, and we presume such decisions were reasonable.
 
 See
 

 State v. Allen
 
 ,
 
 233 N.C.App. 507
 
 , 510,
 
 756 S.E.2d 852
 
 , 856 (2014) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation,
 
 a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance
 
 ....") (quoting
 
 Strickland
 
 ,
 
 466 U.S. at 689
 
 ,
 
 104 S.Ct. at 2065
 
 ,
 
 80 L.Ed.2d at
 
 689 ) (emphasis added). There is nothing to suggest this decision was erroneous such that defendant's counsel provided unconstitutionally deficient performance. Thus, this argument is overruled.
 

 *252
 

 Failure to move to dismiss the charge at the close of all evidence
 

 Defendant's second contention is that his trial counsel provided deficient performance when she failed to move to dismiss the charge against defendant at the close of all of the evidence. Defendant argues there is no legitimate reason for failing to move to dismiss at that time, and had counsel made the motion, defendant could have preserved a sufficiency of the evidence issue for appeal.
 

 A properly preserved appeal of a denial of a motion to dismiss for insufficient evidence is reviewed
 
 de novo
 
 .
 
 State v. Curry
 
 ,
 
 203 N.C.App. 375
 
 , 392,
 
 692 S.E.2d 129
 
 , 142 (2010). If substantial evidence supports a finding that the defendant committed the offense, the motion to dismiss should be denied so that the case can go before a jury.
 

 Id.
 

 Evidence is viewed in the light most favorable to the State, and the State is given the benefit of every reasonable inference.
 
 Id.
 
 at 391-92,
 
 692 S.E.2d at
 
 141 ;
 
 see also
 

 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 379,
 
 526 S.E.2d 451
 
 , 455 (2000) ("[T]he defendant's evidence should be disregarded unless it is favorable
 
 *563
 
 to the State or does not conflict with the State's evidence." (citation omitted)).
 

 However, again, defendant cannot establish prejudice. Had defense counsel presented a motion to dismiss at the close of all evidence, the trial court could have considered the evidence in the light most favorable to the State, leaving any contradictions in the evidence for the jury.
 
 State v. Allen
 
 ,
 
 233 N.C.App. 507
 
 , 512,
 
 756 S.E.2d 852
 
 , 857-58 (2014) ("In weighing the sufficiency of the evidence, the trial court considers all evidence admitted at trial, whether competent or incompetent: ... in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom. Any contradictions or discrepancies in the evidence are for resolution by the jury." (citation omitted)). The only evidence defendant proffered after the close of the State's evidence was the testimony of defendant's grandmother, who testified that defendant spent the night of 29 to 30 May with her. This evidence stood in near direct contradiction to Makara's testimony that defendant was driving the vehicle seen leaving the scene shortly after the fire started in the early morning hours of 30 May 2013. And because the court would have been required to leave contradictions and discrepancies in the evidence for the jury to resolve, a motion to dismiss following the close of the evidence would have been denied.
 
 See
 
 id.
 

 Therefore, defendant cannot establish prejudice in trial counsel's failure to move to dismiss the charge of burning certain buildings at the close of all the evidence. Accordingly, defendant's ineffective assistance of counsel argument is overruled.
 

 *253
 

 IV
 

 In his final issue on appeal, defendant argues the trial court erred by ordering him to pay $5,000 in restitution to Lynnhaven Apartments. Defendant argues there was no evidence to support the award. We agree; therefore, we vacate and remand the restitution order.
 

 Even absent an objection, awards of restitution are reviewed
 
 de novo
 
 .
 
 State v. McNeil
 
 ,
 
 209 N.C.App. 654
 
 , 667,
 
 707 S.E.2d 674
 
 , 684 (2011). A trial court can "require that the defendant make restitution to the victim or the victim's estate for any injuries or damages arising directly and proximately out of the offense committed by the defendant." N.C. Gen. Stat. § 15A-1340.34(b) (2015). The amount of restitution awarded "must be supported by evidence adduced at trial or at sentencing."
 
 State v. Moore
 
 ,
 
 365 N.C. 283
 
 , 285,
 
 715 S.E.2d 847
 
 , 849 (2011) (citation and quotation marks omitted). "[A] restitution worksheet, unsupported by testimony or documentation, is insufficient to support an order of restitution."
 

 Id.
 

 Unsworn statements of a prosecutor also cannot support an order of restitution.
 
 McNeil
 
 ,
 
 209 N.C.App. at 668
 
 ,
 
 707 S.E.2d at 684
 
 . When no evidence supports the award, the award of restitution will be vacated.
 
 Moore
 
 , 365 N.C. at 285,
 
 715 S.E.2d at 849
 
 . If there is specific testimony or documentation to support the award, the award will be affirmed.
 

 Id.
 

 "[T]he quantum of evidence needed to support a restitution award is not high."
 

 Id.
 

 When a restitution award is vacated, the typical remedy is to remand the restitution portion of the sentence for a new sentencing hearing.
 
 See
 

 McNeil
 
 ,
 
 209 N.C.App. at 668
 
 ,
 
 707 S.E.2d at 684-85
 
 (remanding when there was evidence of physical damage to a victim's property but no evidence as to the appropriate amount of restitution).
 

 The trial court awarded restitution of $5,000 because the State prosecutor told the trial court that is how much Lynnhaven Apartments had to pay as an insurance deductible. This is an unsworn statement by the prosecutor that cannot support an award of restitution. The State concedes there is no other specific detail in the record supporting the $5,000 award. There is evidence of substantial damage to the office building, but like the evidence in
 
 McNeil
 
 , that does not speak to the appropriate amount of restitution. Accordingly, we find the restitution awarded is not supported by the evidence adduced at trial or sentencing. We vacate the $5,000 award and, accordingly, remand for a new restitution hearing.
 

 NO ERROR IN PART; VACATED AND REMANDED IN PART.
 

 Judges TYSON and INMAN concur.
 

 [1]
 

 The
 
 McGrady
 
 Court specifically acknowledged the following United States Supreme Court opinions as describing the exacting standards of reliability expert opinion testimony must meet under Federal Rule 702(a) :
 
 Daubert v. Merrell Dow Pharm., Inc.
 
 ,
 
 509 U.S. 579
 
 ,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed.2d 469
 
 (1993) ;
 
 General Electric Co. v. Joiner
 
 ,
 
 522 U.S. 136
 
 ,
 
 118 S.Ct. 512
 
 ,
 
 139 L.Ed.2d 508
 
 (1997) ; and
 
 Kumho Tire Co. v. Carmichael
 
 ,
 
 526 U.S. 137
 
 ,
 
 119 S.Ct. 1167
 
 ,
 
 143 L.Ed.2d 238
 
 (1999).
 
 McGrady
 
 ,
 
 368 N.C. at 884-85
 
 ,
 
 787 S.E.2d at
 
 5-6 (citing
 
 Weisgram v. Marley Co.
 
 ,
 
 528 U.S. 440
 
 , 455,
 
 120 S.Ct. 1011
 
 ,
 
 145 L.Ed.2d 958
 
 (2000) ).
 

 [2]
 

 "Federal courts traditionally grant a great deal of discretion to the trial court in determining the admissibility of expert testimony under
 
 Daubert
 
 ."
 
 State v. Turbyfill
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 249
 
 , 253 (citations and quotation marks omitted),
 
 review denied
 
 ,
 
 368 N.C. 603
 
 ,
 
 780 S.E.2d 560
 
 (2015).
 

 [3]
 

 A previous panel of this Court set out the
 
 Daubert
 
 factors a trial court may consider in determining whether scientific testimony was reliable, as follows:
 

 In the context of scientific testimony,
 
 Daubert
 
 articulated five factors from a nonexhaustive list that can have a bearing on reliability: (1) "whether a theory or technique ... can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) the theory or technique's "known or potential rate of error"; (4) "the existence and maintenance of standards controlling the technique's operation"; and (5) whether the theory or technique has achieved "general acceptance" in its field.
 
 Daubert
 
 ,
 
 509 U.S. at 593-94
 
 ,
 
 113 S.Ct. 2786
 
 . When a trial court considers testimony based on "technical or other specialized knowledge," N.C. R. Evid. 702(a), it should likewise focus on the reliability of that testimony,
 
 Kumho
 
 ,
 
 526 U.S. at 147-49
 
 ,
 
 119 S.Ct. 1167
 
 . The trial court should consider the factors articulated in
 
 Daubert
 
 when "they are reasonable measures of the reliability of expert testimony."
 

 Id.
 

 at 152
 
 ,
 
 119 S.Ct. 1167
 
 . Those factors are part of a "flexible" inquiry,
 
 Daubert
 
 ,
 
 509 U.S. at 594
 
 ,
 
 113 S.Ct. 2786
 
 , so they do not form "a definitive checklist or test,"
 

 id.
 

 at 593
 
 ,
 
 113 S.Ct. 2786
 
 . And the trial court is free to consider other factors that may help assess reliability given "the nature of the issue, the expert's particular expertise, and the subject of his testimony."
 
 Kumho
 
 ,
 
 526 U.S. at 150
 
 ,
 
 119 S.Ct. 1167
 
 .
 

 State v. Abrams
 
 , --- N.C.App. ----, ----,
 
 789 S.E.2d 863
 
 , 865-66 (2016).